## BALTIMORE & O. R. CO. v. HELLENTHAL.

(Circuit Court of Appeals, Sixth Circuit. July 5, 1898.)

### No. 578.

1. EVIDENCE—ADMISSIBILITY.
   Testimony of a witness, acquainted with the situation, that a railroad track is straight at a certain point, and a crossing in plain view for a certain distance, is competent.

2. APPEAL AND ERROR—OBJECTIONS TO EVIDENCE.
   Objections to the admission of evidence which do not specifically and distinctly indicate the grounds upon which they are made are of no avail on appeal.

**3.** CONTRIBUTORY NEGLIGENCE—RIGHT OF ACTION.

Contributory negligence of the party injured will not defeat an action, if the defendant might, with reasonable care, have avoided the consequences of such negligence.

**4.** NEGLIGENCE—QUESTION FOR JURY.

Where there is conflicting evidence as to the distance at which an engineer on a locomotive saw a child on the track and as to the distance within which the train could be stopped, the question as to whether the engineer was negligent in not stopping the train in time is for the jury.

**5.** MEASURE OF DAMAGES—INSTRUCTIONS.

When the law in regard to the measure of damages for the killing of a child is correctly given in the general charge, it is not error to refuse a more detailed special instruction covering the same ground.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

This action was brought in the court of common pleas of Franklin county, Ohio, against the Baltimore & Ohio Railroad Company, the plaintiff in error, to recover damages for the death of William Bauer, caused, as alleged, by the negligence of plaintiff in error. The case was, upon petition of the defendant, removed into the circuit court of the United States for the Eastern division of the Southern district of Ohio, and the trial resulted in a verdict and judgment in favor of the plaintiff for $1,500, and the case is brought here for review on writ of error. Deceased was a child 18 months of age, and had escaped from the home of his parents about 9 o'clock a. m., Sunday, April 9, 1894, and had wandered unobserved upon the railroad track of the defendant at a public crossing 50 yards or more from the house, and was sitting with his head down at the edge of the boards which made the highway, and just at the end of the cattle guard, when struck and killed by the locomotive of a passenger train of the defendant going south. This crossing was half a mile or more south of Briggsdale station, on the Midland Division of the defendant's railway system. The view of this crossing was open and unobstructed, and the track straight, from Briggsdale station going south. From Briggsdale station to the crossing is slightly up grade. The day was clear and the track dry. The engineer on the locomotive says the child, when first seen, was thought to be a Plymouth Rock chicken, being dressed, as the proof all shows, in light blue clothes. He says that when he first discovered that the object was a child he was 300 to 400 feet away, and said to the fireman, "My God, Dick, there is a child on the track!" and at once applied the emergency brake, and used all means to stop the train, reversing, as he thinks, the engine. The fireman (Johnson) agrees in the main with the engineer in his testimony, and says positively the engine was reversed, but says that when the engineer told him there was a child on the track they were two, and it may have been three, hundred yards from the child, so far as he can remember. Locomotive engineers were examined as experts, and gave opinions as to the distance required within which to stop a passenger train by application of all available appliances under the circumstances attending the accident,--such as the rate of speed, length of train, grade and condition of track. The necessary distance, as estimated by the different witnesses, varied from 350 to 1,000 feet. The court, in the charge to the jury, eliminated from the case and withdrew from the jury every question except the simple issue of fact whether, after the engineer knew or suspected that the object on the track was a child, he used ordinary care and skill to avoid the accident. The exact language of the court was as follows: "This case presents a very simple issue. The first one is whether the engineer, after he saw the object on the track, and after he knew or suspected that that object was a child, used the care and skill which an engineer of ordinary care and skill would have used to avoid the accident. If he did, then the company is not liable; if he did not, the company is liable. The only evidence on the subject shows that the child was sitting at the edge of the boards which make the highway, with its head down over the rail. It was not using the highway for the purpose of passing or repassing. It was sitting there in a way in which it had no right to use

the highway. Therefore it had not the rights of a traveler upon the highway, and the company was not bound, with respect to it, to use care before its agents should have discovered that it was a child upon the highway. The only issue before you, therefore, is whether, after the engineer or fireman saw the object, and either knew or suspected that it was a child, he used the care and skill which an average engineer—an engineer of average skill and care—would have used to prevent the accident. If he did, the company is not liable; if he did not, the company is." The court denied a motion or request to direct a verdict in favor of defendant upon the whole of the evidence, refused certain special instructions requested by defendant, and error is assigned to the action of the court in denying the motion and special instructions, as well as to the ruling in admitting certain evidence over objection by defendant.

J. N. Collins, for plaintiff in error.
Thomas B. Minehan, for defendant in error.

Before LURTON, Circuit Judge, and SEVERENS and CLARK, District Judges.

CLARK, District Judge, after stating the case as above, delivered the opinion of the court.

In considering the grounds relied on for reversal in this court, we shall examine the questions in the order in which they would arise in the progress of the trial, rather than according to importance or the order in which they were discussed at the bar. This brings us to the question made on the admission of certain evidence against exception by the defendant. William Bauer, the father of the deceased child, was permitted to testify that the track was straight, and the track and crossing in plain view for about two miles going south, or going from Columbus. There was objection to this at the trial, and also in the assignment of errors, although this is apparently not pressed or relied on in the brief, and the objection is clearly not well taken. It was obviously competent to show by any witness acquainted with the situation that the track was straight, and the view of the crossing unobstructed, and for what distance. Other witnesses had proved substantially the same facts without objection, except the distance was stated as not being quite so far in which the view was thus plain and open. Other evidence was admitted under exception, which presents a more serious question. Experiments had been made by witnesses after the accident and before the trial, by placing objects on the railroad track at the crossing where the child was, or was supposed to have been, and walking back upon the railroad track to ascertain by observation how far these objects could be seen. A black hat at one time, and a blue dress on a small bush at another, were the objects used for these tests or experiments. The bush was supposed to represent the height of the child, and the dress the color of that on the child when killed. Not only the full substance of the evidence to the admission of which the error is alleged is in accordance with the rules of this court quoted in the assignment of errors, but the same, with the objection, is set out literally as follows: "Q. What object did you place there? (To which question the defendant objected. Objection overruled. Exception by defendant.)"

And the answer thereto as follows: "A. We laid a black hat on the crossing, and went down below the station, and we could see it, and tell what it was." Also the following question asked the witness William Bauer, and the answers thereto: "Q. Did you try more than one object? You used a black hat. Did you try anything else? A. We used a dress there one morning,—one of his little blue dresses. Q. Was it the dress the child had on that morning? A. Another one just like it. Q. How far could you see that dress? A. About three-quarters of a mile. Q. Did you have any difficulty in telling what it was? A. We could tell it was a dress, and the color of it. (To which evidence with reference to the experiments the defendant objected. Objection overruled. Exception by defendant.)" Also the following question, asked the witness Anton Hellenthal: "Q. What did they place on the track to look at? (To which question the defendant objected. Objection overruled. Exception by defendant.) A. It was on the public road crossing. Q. What did you place on the track, to go and look at, to see how far you could see it?" And the answer thereto, as follows: "A. We had a dress just like the child had on. Q. How far could you see that dress? A. Why, we could see it—let me see— over half a mile. (To which question and answer the defendant objected. Objection overruled. Exception by defendant.)" Also the following question asked the witness Solomon S. Moore: "Q. Well, what did you observe about that?" And the answer thereto, as follows: "A. We took a bush,—a small bush,—and put it on the crossing, put a little garment on it, and then went back to the curve. (To which question and answer the defendant objected. Objection overruled. Exception by defendant.)" It will be seen that these objections are general, and no specific grounds for the objections are stated. The learned circuit judge, in the charge, explained to the jury fully and clearly that this evidence was admitted for the sole purpose of enabling the jury to weigh the credibility of the engineer's statement that he did not suspect the presence of the child until too near to avoid the accident. The jury was told that, if the circumstances of these experiments were not sufficiently similar to those of an engineer in the cab above the track, and going at a rate of speed of 40 or 45 miles an hour, then they should be disregarded as evidence. The contention is that the question whether the conditions in the experiments were substantially or sufficiently similar to those of the engineer was one going to the admissibility, and not to the effect, of the evidence, and was, therefore, a preliminary question for the court, and not the jury. We do not find it necessary, however, to decide this question. We have remarked that the objection to the testimony was general. It has been decided again and again that an objection to evidence which does not specifically and distinctly indicate the grounds upon which it is made is of no avail on writ of error. Mitchell v. Marker, 22 U. S. App. 325, 10 C. C. A. 306, and 62 Fed. 139; Toplitz v. Hedden, 146 U. S. 252, 13 Sup. Ct. 70; U. S. v. Shapleigh, 12 U. S. App. 26, 4 C. C. A. 237, and 54 Fed. 126. This assignment, for this reason, cannot be sustained.

The question raised by the assignment of error on the court's

action in refusing to direct a verdict for defendant must now be examined. The contention is that the deceased child, being a trespasser on the railroad track, and so treated in the court's instructions to the jury, it would be necessary for plaintiff, in order to recover, to show that the killing was willful or intentional, while this element of willful injury is neither alleged nor proved. It must be conceded that the case proceeded throughout upon the theory of negligence only, and not of willful wrong; and it is undoubtedly the well-established general rule that with respect to trespassers upon its track the railroad company owes no duty except to do such trespassers no intentional wrong or injury. As was said by this court in Felton v. Aubrey, 43 U. S. App. 291, 20 C. C. A. 441, and 74 Fed. 356:

"The law imposes no duty in respect to trespassers upon its track, except that general duty which every one owes to every other person to do him no intentional wrong or injury. The liability of a railway company to discharge this duty can only arise when it becomes aware of the danger in which a trespasser stands. Railroad Co. v. Cook, 31 U. S. App. 277, 13 C. C. A. 364, and 66 Fed. 115. The overwhelming weight of authority is in accord with this rule, and no court has more clearly stated the principle than the supreme court of Kentucky. McDermott v. Railroad Co., 93 Ky. 408, 20 S. W. 380; Hoskins v. Railroad Co., 30 S. W. 643; Brown's Adm'r v. Railroad Co., 97 Ky. 228, 30 S. W. 639; Gherkins v. Railroad Co., 30 S. W. 651."

There is, however, a qualification of this general rule as thus stated, as fully established by decisions of the highest authority as the rule itself. This qualification is expressed in the proposition that, if it be shown that the defendant might, after becoming aware of plaintiff's negligence, by the exercise of reasonable care and prudence have avoided the effect of the plaintiff's negligence or trespass, the defendant is liable for the injury. The qualification of the rule is thus stated in Railway Co. v. Ives, 144 U. S. 429, 12 Sup. Ct. 687:

"Although the defendant's negligence may have been the primary cause of the injury complained of, yet an action for such injury cannot be maintained if the proximate and immediate cause of the injury can be traced to the want of ordinary care and caution in the person injured, subject to this qualification, which has grown up in recent years (having been first enunciated in Davies v. Mann, 10 Mees. & W. 546): that the contributory negligence of the party injured will not defeat the action if it be shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequences of the injured party's negligence."

Among numerous decisions, both state and federal, supporting this qualification of the general rule, we refer to the following: Patton v. Railway Co., 89 Tenn. 370, 15 S. W. 919; Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653; Railroad Co. v. Harmon's Adm'r, 147 U. S. 582, 13 Sup. Ct. 557; Railway Co. v. Whitcomb, 31 U. S. App. 386, 14 C. C. A. 183, and 66 Fed. 915; Railroad Co. v. Kassen, 49 Ohio St. 230, 31 N. E. 282; Louisville & N. R. Co. v. East Tennessee, V. & G. Ry. Co., 22 U. S. App. 102, 9 C. C. A. 314, and 60 Fed. 993. Indeed, the principle of this qualification is now the accepted doctrine in the English courts, including the house of lords, and in all the courts of all the states of the Union, so far as the cases presenting the question squarely have come under our

examination. See 7 Am. & Eng. Enc. Law (2d Ed.) p. 387; 1 Shear. & R. Neg. (5th Ed.) § 99.

In view of what has been said, it is hardly necessary to add that the principle of this qualification is based upon the ground of negligence only, and the element of intentional or willful wrong is not essential to render the principle applicable. That this is true is a proposition so clearly deducible from the cases referred to as to admit of no question or discussion. We think this well-established qualification of the general rule was applicable to the facts of this case. There was a conflict in the evidence, as we have seen, as to the distance in which a passenger train, under the circumstances of the one in question, might be stopped, and there was a similar conflict as to the distance at which the engineer first became aware that the object ahead was a child. In view of the extreme limits of the distance in both respects, which appear in the evidence, we are of opinion that the court could not say, as a matter of law, that the jury might not justifiably conclude upon the whole of the proof that the engineer might, by the exercise of reasonable care and skill, have avoided the injury. We think the court properly submitted that question to the jury upon the disputed facts of the case, and that there was no error in the court's refusal to withdraw the case from the jury. White v. Van Horn, 159 U. S. 3, 15 Sup. Ct. 1027; Railroad Co. v. Mackey, 157 U. S. 72, 15 Sup. Ct. 491.

The only remaining assignments of error relied on in argument are based upon the court's refusal to give certain special charges in relation to the measure of damages. The court's instruction to the jury upon this subject was as follows:

"Now, what do I mean by pecuniary loss? I mean that you are to estimate, as far as you may, what, had the child lived, would those who sue here, its parents and next of kin, receive in money from that child and its earnings. Therefore you are to estimate—First, how long it would have been likely to live; second, if it had lived, what would have been its earning capacity; third, assuming that it would have earned money, how much of that money would have come to the relatives. And in that connection you ought to consider the fact that for a number of years, until it was 14 years of age, there was no probability that it would earn anything, and there was every probability that it would be a burden upon the parents."

In this instruction the jury's attention was correctly called to the proper elements of damage, and the purpose of the special instructions seems to have been to have the court apply the principles for the injury in a somewhat mathematical way, by stating an account between the probable income from service of the child and the expense of education and maintenance. The principles under which damages were to be assessed were correctly and explicitly given, and the details of estimating the damages were within the province of the jury. The special instructions were not different in substance or effect from the court's charge upon the same subject, which was not excepted to, nor subject to legal objection. The only difference was in mode of statement and the extent to which details were given. The law having been correctly stated in the general instruction, the court was not required to repeat the same

statement in substance in a special instruction. White v. Van Horn, 159 U. S. 3, 15 Sup. Ct. 1027; Coffin v. U. S., 162 U. S. 664, 16 Sup. Ct. 943; Railroad Co. v. Leak, 163 U. S. 280, 16 Sup. Ct. 1020.

Two other objections are made in the assignments of error, but these are not discussed in the brief for plaintiff in error, and apparently not relied on. In view of the record, we think they are clearly not well taken, and do not require special consideration. Judgment affirmed.